_____

No. 96-1262

_____

United States of America,    *
                                *

    Plaintiff-Appellee,    *
                                *  Appeal from the United States

        v.                *  District Court for the Eastern
                                *  District of Missouri

Cleophus Feemster,        *
                                *

    Defendant-Appellant.    *
                                *

_____

Submitted: June 11, 1996

Filed: October 25, 1996

_____

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Circuit  Judge, and ROSENBAUM,[*] District Judge.

_____

FLOYD R. GIBSON, Circuit Judge.

Cleophus Feemster was convicted of one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) (1994) and one count of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1994).[1]  He was sentenced to a total of 55 months imprisonment.  He now appeals his conviction on the basis that the prosecutor's use of "peremptory" challenges to strike African American jurors violated the Supreme Court's decision in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).  We affirm.

_____

[*]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

## I. BACKGROUND

Feemster is an African American.  The venire panel of twenty-eight persons included three African Americans and twenty-eight Caucasians.  The prosecution used three of its six "peremptory" challenges to strike all three of the African American venirepersons, Nos. 13, 15, and 20, resulting in an all-white jury and alternates.  After the  exercise of the "peremptory" challenges but before the jury was sworn in, defense counsel moved for a mistrial pursuant to Batson, claiming that the prosecution had exercised its "peremptory" challenges in a racially discriminatory manner.  The district court assumed without deciding that Feemster had articulated a prima facie case of discrimination under Batson and asked the prosecution to come forward with racially neutral reasons for its use of its "peremptory" challenges.

The prosecution first stated that it was looking to strike venirepersons who lacked strong ties to the community.  The defense then pointed out that Juror 20, an African American man, had owned a home in the community for twenty-six years, held the same job for twenty-five years, was married, and had two adult children.  The prosecution then stated that it had struck Juror 20 because it was troubled by his close relationship with his stepson, who had been convicted of fraud.

The defense then pointed out that Juror 13, an African American woman, had been locally employed as a school teacher for four years and had two young children.  The prosecution replied that its motivation for striking her also included the facts that she was young in relation to the rest of the panel, had taken prior law-related classes in undergraduate school, and had sat for the Law School Admissions Test (LSAT).

Finally, the defense argued that Juror 15, an African American man, though unemployed, was a longstanding St. Louis resident with

significant community ties.  The prosecution replied that the facts that Juror 15 was young, single, unemployed, and had a brother who had been convicted of drug possession had all factored into its decision to strike him.  The district court ultimately found that the prosecution had not exercised its "peremptory" strikes in a racially discriminatory manner and denied Feemster's motion.

## II. DISCUSSION

The Equal Protection Clause of the United States Constitution forbids the prosecution from using its "peremptory" challenges to strike potential jurors based "solely on account of their race."  Batson, 476 U.S. at 89. Batson dictates a three-step analysis: First, the defendant must make a prima facie showing that the prosecution has used its "peremptory" challenges to strike a potential juror because of race.  Once the defendant has made such a showing, the prosecution bears the burden of coming forward with a race-neutral explanation for challenging the juror in question. Finally, the district court must determine whether the defendant met his burden of proving purposeful discrimination.  Hernandez v. New York, 500 U.S. 352, 358-59 (1991) (citing Batson, 476 U.S. at 96-98).  We review the district court's ultimate finding of purposeful discrimination for clear error.  United States v. Logan, 49 F.3d 352, 357 (8th Cir. 1995).

We find none.  Feemster first asserts that the district court skipped the third phase of the Batson analysis by blindly accepting the prosecution's assurances once it proffered race-neutral reasons for the exercise of its "peremptory" challenges.  A closer examination of the record, however, shows that the district court properly weighed the persuasiveness of the proffered race-neutral reasons as it should have at that stage, Gibson v. Bowersox, 78 F.3d 372, 374 (8th Cir. 1996), petition for cert. filed, (June 7, 1996) (No. 95-9543), and made a very specific finding that "the Government has not exercised their peremptories in a racially

discriminatory manner."  See <u>United States v. Jenkins</u>, 52 F.3d 743, 747 (8th Cir. 1995).

Feemster next asserts that the proffered race-neutral reasons were clearly pretextual, and that the district court's ultimate conclusion is erroneous.  In addition to bearing the ultimate burden of persuasion, the defendant also bears the burden of proving pretext once a race-neutral explanation has been offered.  <u>United States v. Scott</u>, 26 F.3d 1458, 1467 (8th Cir.), <u>cert. denied</u>, 115 S. Ct. 584 (1994).  Feemster accurately argues that all three of the struck African American venirepersons had strong community ties.  Were this the sole race-neutral explanation offered by the prosecution, we might be inclined to find pretext.  The prosecution, however, offered additional alternative race-neutral reasons that factored into its decision to strike Jurors 13, 15, and 20.  The prosecution stated that it struck Juror 13, who had taken some business law and criminal law undergraduate courses and had sat for the LSAT, due in part to her relative youth in comparison to the rest of the panel and her prior legal training.  Both relative youth and prior legal training qualify as potential race-neutral factors justifying the exercise of "peremptory" challenges.  <u>United States v. Hoelscher</u>, 914 F.2d 1527, 1540-41 (8th Cir. 1990), <u>cert. denied</u>, 500 U.S. 943 (1991); <u>Scott</u>, 26 F.3d at 1466.  The prosecution further stated that it struck Jurors 20 and 15 largely because both men had a close relationship with someone who had been convicted of a serious crime.  This Court has held in the past that the incarceration of a close family member is a legitimate race-neutral reason justifying the use of a "peremptory" strike.  <u>United States v. Jackson</u>, 914 F.2d 1050, 1052-53 (8th Cir. 1990).

Feemster contends that these explanations are pretextual because they were not consistently applied to similarly situated white jurors.  We are mindful that pretext may be shown where "non-stricken white panel members share the characteristics of a

stricken minority panel member." <u>Jenkins</u>, 52 F.3d at 747. In this case, however, we find no evidence of such disparate treatment of similarly situated white venirepersons. The prosecution struck Juror 11, a white woman whose brother had been charged with embezzlement. It also struck Juror 27, a white woman who whose husband had been charged with felony DWI. While the prosecution failed to strike Juror 14, a white man whose cousin had been convicted of fraud, the prosecution adequately distinguished the closeness of the relationship between this particular juror and his convicted relative as opposed to Jurors 11, 15, 20, and 27. We agree that Juror 14 was not similarly situated to the other jurors struck because of their close relationship with a convicted relative. As such, we believe the prosecution applied this factor evenhandedly and find no evidence of pretext to support Feemster's claim on this issue. We similarly find no evidence that the prosecution failed to challenge white jurors similarly situated to Juror 13. While other white jurors with some degree of legal education were not struck, there were no other similarly situated white jurors who had taken criminal law classes or had sat for the LSAT.

Our decision would be easier had the prosecution initially come forward with these valid race-neutral reasons instead of attempting to rely on the clearly inapplicable "community ties" rationale. Nevertheless, this issue boils down to a question of credibility, and "evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" <u>United States v. Darden</u>, 70 F.3d 1507, 1531 (8th Cir. 1995) (quoting <u>Hernandez</u>, 500 U.S. at 365), <u>cert. denied</u>, 116 S. Ct. 1449 (1996)), and these proffered criteria are hardly the type of "implausible" or "fantastic" post-hoc justifications that would facially indicate pretext. <u>Purkett v. Elem</u>, 115 S. Ct. 1769, 1771 (1995) (<u>per curiam</u>). Consequently, we conclude that Feemster has failed to carry his burden of demonstrating pretext.

## III. CONCLUSION

We do not find the district court's decision that the prosecution did not exercise its "peremptory" challenges in a racially discriminatory manner to be clearly erroneous. Consequently, we affirm its judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.